**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eugene Davis WASHINGTON,**
**Defendant–Appellant.**

No. 96–50359.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1998.

Decided April 12, 1999.

Stephen M. Hogg, Simi Valley, California, for the defendant-appellant.

Jean Rosenbluth, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: FLETCHER, THOMPSON, and LEAVY, Circuit Judges.

Opinion by Judge LEAVY; Dissent by Judge FLETCHER.

LEAVY, Senior Circuit Judge:

We are asked in this case to determine the scope of our remand for resentencing. The defendant, Eugene Davis Washington, claims that the district court exceeded the scope of the remand by departing upwards. We affirm the district court's sentence.

## BACKGROUND

Washington's first trial on drug charges ended in a hung jury. He was tried a

second time and again the jury deadlocked. Washington then plead guilty to drug and bank fraud charges and was sentenced to 60 months in prison. In the course of a related investigation, the government discovered that Washington had bribed a juror in his first trial.` He was then convicted of conspiracy to obstruct justice, obstruction of justice and bribery of a juror. On appeal, we affirmed his conviction, vacated his 144 month sentence, and remanded for resentencing. *United States v. Washington,* 66 F.3d 1101 (9th Cir.1995).

We held that the district court correctly determined that Washington's offense level should be computed under Section 2J1.2 of the Sentencing Guidelines, which prescribes the offense level for "Obstruction of Justice."[1] We held, however, that the district court erred in applying Section 2J1.2(c)(1)'s cross-reference to Section 2X3.1 ("Accessory After the Fact"). Application of the cross-reference resulted in a higher offense level than Washington would have received under the specific offense characteristics of Section 2J1.2(b).[2] Under the version of the Guidelines in effect when Washington committed his crimes, the cross-reference was inapplicable. Prior to his sentencing, the commentary was amended to permit application of the cross-reference to a defendant who was not an accessory after the fact. We held that this was a substantive rather than a clarifying change; therefore, the cross-reference could not apply to Washington. 66 F.3d at 1104. We concluded:

> We therefore vacate Washington's sentence and remand for the limited purpose of recalculating his base offense level under section 2J1.2, without applying the cross-reference to section 2X3.1, and resentencing him accordingly.

*Id.*

The district court resentenced Washington on June 24, 1996. The court computed the base offense level under Section 2J1.2 ("Obstruction of Justice"), which has a base offense level of 12, without application of the cross-reference. The district court then adjusted the offense level to 19 as follows: it added a three-level increase under Section 2J1.2(b)(2) for substantial interference with the administration of justice; and, as it had done before, it added a two-level increase under Section 3B1.1(c) for Washington's leading role in the offense; and, again as before, it added a two-level increase under Section 3C1.1 based upon Washington's perjured testimony at trial. The parties do not dispute these adjustments.

The court then departed upwards 13 levels to a level of 32 pursuant to Sections 5K2.0 and 5K2.9.[3] The court explained its

1. Section 2J1.2 Obstruction of Justice (1997 edition):

(a) Base Offense Level: 12
(b) Specific Offense Characteristics
   (1) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels.
   (2) If offense resulted in substantial interference with the administration of justice, increase by 3 levels.
(c) Cross Reference
   (1) If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

2. Under Section 2J1.2(c)'s cross-reference to Section 2X3.1, the base offense level is six levels below the offense level for the underlying offense. The underlying offense was a drug offense which had a base offense level of 32. Therefore, the base offense level would have been 26 applying the cross-reference (32—6). The district court originally adjusted the offense level upwards two levels under Section 3B1.1 (role in the offense), and two levels under Section 3C1.1 (perjured testimony at trial), for a total adjusted offense level of 30.

3. The district court departed upward under Section 5K2.0 (departure if the court finds there exists an aggravating circumstance not adequately taken into consideration by the guidelines), and under Section 5K2.9 (departure if the defendant committed the offense in

reasoning for the upward departures and resentenced Washington to 144 months.[4] Washington timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### ANALYSIS

Washington claims that the words "remand for the *limited purpose*" narrowed the scope of the mandate to the extent that the district court had no authority to depart upward when resentencing.[5] We reject this argument.

The parties argue at length about whether the mandate effected a "limited remand." We have used the term "limited remand" to describe a remand to the district court for proceedings prior to this court's consideration of the merits of an appeal. *See, e.g., Mirchandani v. United States,* 836 F.2d 1223, 1225 (9th Cir.1988) (limited remand ordered for the district court to hear a motion to reopen the proceedings to consider newly discovered evidence). Once an appeal has been decided on the merits, the mandate is issued. Fed. R.App. P. 41. If the case is remanded for further proceedings, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir.1984). The mandate "is controlling as to all matters within its compass, but leaves the district court any issue not expressly or impliedly disposed of on appeal." *Id.*

In *United States v. Caterino,* 29 F.3d 1390 (9th Cir.1994), (overruled on other grounds by *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)), we stated that the general practice in a remand for resentencing was to vacate the entire sentence. We will presume that this general practice was followed unless there is "clear evidence to the contrary." 29 F.3d at 1395.

The inquiry in this case is the scope of the mandate. We decline to determine whether the remand is a "general" or "limited" remand, because these terms are not helpful to the inquiry.

The mandate first vacated the sentence, then remanded "for the limited purpose of recalculating [the] base offense level under

---

order to facilitate or conceal the commission of another offense).

4. The district court stated:
   "[T]he departure is warranted pursuant, first of all, to the Sentencing Guideline Section 5K2.0, because there exists an aggravating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. The circumstance is that the Sentencing Commission's failure to take into account under the version of the Sentencing Guidelines in effect at that time of the offense conviction, i.e., a defendant's obstruction of his own criminal case.
   The departure is pursuant to Sentencing Guideline Section 5K2.9 because the defendant committed an offense in order to facilitate or conceal the commission of another offense. These offenses were the counterfeit check scheme and the fraudulent wire transfer scheme that defendant put into effect before, during and after the first narcotic trial.
   The structure, standards, and policies of the Sentencing Guidelines dictate that defendant not receive a net benefit from his crime, but in fact be punished for it. The structure, standards, and policies of the Sentencing Guidelines also require that the defendant, principal, and jury tampering offense not receive a lower sentence than his accessories. The extent of the departure is necessary to account for the seriousness of the crime the defendant avoided punishment for by his obstruction of justice, that is, the narcotics offense.
   The extent of the departure is necessary to account for the total compliance sentence of 231 months that defendant avoided by his obstruction of justice. The extent of the departure is necessary to ensure that defendant does not receive a net sentencing benefit for his obstruction of justice.
   And lastly, the extent of the departure is necessary to account for the extensive fraud schemes that defendant was able to complete because he tampered with the jury on the narcotic case."

5. Without the upward departures, the adjusted offense level would remain at 19. With a criminal history category of 4, the sentencing range would be 46–57 months.

section 2J1.2, without applying the cross-reference to section 2X3.1" and finally directed the district court to "resentence accordingly." The government pointed out in the first appeal that if the cross-reference were held to be inapplicable [which it was], the government would seek a similar sentence through upward departure.[6] The mandate did not prohibit adjustments to the base offense level nor proscribe a departure.

In *United States v. Moreno–Hernandez,* 48 F.3d 1112 (9th Cir.1995), we vacated a defendant's 125–month sentence because the government did not prove that the felony charged in the indictment was an aggravated felony. The district court resentenced the defendant for a lesser term of imprisonment on the felony, but applied sentencing enhancements and ordered the sentences to run consecutively, which resulted in a total restructured sentence of 120 months. The defendant argued that the district court erred by using the guidelines to impose a sentence substantially similar to the original erroneous sentence, thus frustrating the purpose of the mandate. We rejected that argument, stating, "[W]e did not limit the overall sentence the district court could impose, nor did we circumscribe the manner in which the court could apply the Sentencing Guidelines. We simply directed the district court to limit its sentence on Count 4 to the five-year maximum prescribed by section 1326(b)(1)." 48 F.3d at 1117. *Accord, United States v. Ponce,* 51 F.3d 820, 826 (9th Cir.1995).

Similarly, in this case, the mandate directed the district court to calculate the base offense level without application of the cross-reference. The district court did that. The mandate did not limit the overall sentence nor circumscribe the manner in which the court could apply other guideline provisions, including the applicability of departures under Sections 5K2.0 and 5K2.9.

■ The district court specifically identified the factors which justified the depar-

tures. *See United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The district court's explanation for the extent of the departures cannot be said to be unreasonable; therefore, the sentence imposed is affirmed. *Id.*

Washington argues that the district court erred in ordering the sentences to run consecutively and in computing the sentence on the conspiracy court. The government contends that Washington cannot raise these arguments because the scope of the mandate precludes the district court from examining any other sentencing issues. We reject the government's position because of our holding that the mandate precluded only the reexamination of one sentencing issue—the application of the cross-reference in Section 2X3.1. When the district court resentenced Washington, it put together a new sentencing "package." *See United States v. Moreno–Hernandez,* 48 F.3d at 1116. *Accord, United States v. Petty,* 80 F.3d 1384, 1388 (9th Cir.1996). Washington preserved his sentencing arguments in the district court and they are properly before us. *See United States v. Sanchez,* 908 F.2d 1443, 1447 (9th Cir.1990).

Nevertheless, we find Washington's arguments to be without merit. The district court had authority to impose consecutive sentences, *see United States v. Wylie,* 625 F.2d 1371, 1382 (9th Cir.1980), and the district court did not err in calculating the sentence on the conspiracy count.

AFFIRMED.

FLETCHER, Circuit Judge, Dissenting:

I respectfully dissent. Despite this court's remand for a "limited purpose" only, the majority allows the district court to stray beyond that purpose. Where the scope of the remand has been expressly limited to consideration of a single sentencing issue, the district court is without

6. Appellee's Brief, Case No. 93–50786, page 28, note 4.

authority to revisit other issues. *United States v. Petty*, 80 F.3d 1384, 1388 (9th Cir.1996); *see also United States v. Klump*, 57 F.3d 801, 803 (9th Cir.1995) (sentencing court may not consider conduct beyond the scope of a limited remand); *United States v. Caterino*, 29 F.3d 1390, 1394–95 (9th Cir.1994) (district court's authority on remand abridged by any express or implied limits in the remand order), *overruled on other grounds by Witte v. United States*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

Whether the district court's authority is limited depends on whether there is "clear evidence" that the court of appeals intended to issue a limited as opposed to a general remand. *See Caterino*, 29 F.3d at 1395; *Petty*, 80 F.3d at 1388; *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995). A limitation may be express or implied. *See Caterino*, 29 F.3d at 1394; *Ponce*, 51 F.3d at 826. Not surprisingly, where panels do intend to issue a limited remand, that "clear evidence" usually comes in the form of an explicit statement that the remand order is of limited scope. *See, e.g., United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir.1997) ("Accordingly we remand this [habeas] case to the district court for the limited purpose of granting or denying a certificate of appealability within 42 days of this order.").

In this case, we made precisely such a statement. Our remand order reads, "We therefore vacate Washington's sentence and remand for the limited purpose of recalculating his base offense level under section 2J1.2, without applying the cross-reference to section 2X3.1, and resentence him accordingly." *United States v. Washington*, 66 F.3d 1101, 1105 (9th Cir.1995). One can hardly imagine a more explicit setting forth of the precise limitation on the district court's authority on remand. *See Ponce*, 51 F.3d at 826 ("Had the court sought to limit the scope of the district court's authority on remand, it could easily

have done so."). In evaluating the propriety of the district court's de novo sentencing on remand, the majority seriously errs when it ignores the language of the remand order.[1]

The majority apparently is driven by its sense that justice can be done only with an upward departure to compensate for the direction to the lower court to recalculate the base offense level that results in a lower sentence. Be that as it may, the government should have sought rehearing from this court the first time round rather than urging the district court to ignore the mandate. Our court should not now countenance the disregard of the mandate.

The cases cited by the majority in support of its analysis are cases where the remand was general. In *United States v. Moreno–Hernandez*, 48 F.3d 1112 (9th Cir. 1995), this court remanded for resentencing when we discovered that the 125–month sentence imposed by the district court exceeded the lawful statutory maximum of five years. The remand order-"The conviction is affirmed, but the sentence is VACATED and the case is REMANDED for resentencing"-contained neither implicit nor explicit limitations on the overall sentence the district court could impose. *United States v. Moreno–Hernandez*, 999 F.2d 545, 1993 WL 280391 at * 2 (9th Cir.1993). Similarly in *Ponce*, we found no limitation in a remand order that read *"Martinez* compels us to vacate the sentences, because the district court erred in departing from the guidelines based on the quantity of drugs involved. Defendant's sentences should be recalculated accordingly. AFFIRMED, except that the SENTENCES are VACATED AND REMANDED." *Ponce*, 51 F.3d at 826.

The majority ignores *United States v. Pimentel*, 34 F.3d 799 (9th Cir.1994). There, on the first appeal the court expressly limited the remand to consider-

---

1. The majority recognizes that "[t]he inquiry in this case is the scope of the mandate," but then inexplicably states that it "decline[s] to

determine whether the remand is a 'general' or 'limited' remand, because these terms are not helpful to the inquiry."

ation of a single sentencing issue: whether and to what extent the district court would exercise its authority to depart from the guidelines because of the defendant's extraordinary family circumstances. *Id.* at 800. On remand, the district court declined to consider other issues. On the second appeal, we said:

> In *Pimentel I* ... we expressly limited the scope of our remand to consideration of a single sentencing issue: whether and to what extent, the district court would exercise its authority to depart based upon Pimentel's extraordinary family circumstances.
>
> In light of this clear evidence that the scope of our remand was limited to the single sentencing issue raised in Pimentel's prior appeal, the district court was without authority to reexamine any other sentencing issues on remand. *See* Fed. R.Crim. P. 35(a)(2); *Caterino,* 29 F.3d at 1395 (holding that in absence of clear evidence to the contrary, defendant's entire sentence was vacated and all sentencing issues were open to reargument following remand). Accordingly, the district court did not err by declining to address on remand the question of whether Pimentel's counts of conviction were improperly not grouped when calculating her adjusted offense level.

*Pimentel,* 34 F.3d at 800.

Here, our mandate's scope was also limited to a single issue: the district court was directed to recalculate Washington's base offense level under section 2J1.2 of the Guidelines without applying the cross-reference to section 2X3.1. The instruction to the district court "to resentence accordingly" did not permit it to resentence anew.[2] Rather, that instruction must be read with the analysis offered in the opinion. Moreover, the instruction is redundant, since a district court never has the authority to take actions inconsistent with remand. The phrase does not signal

to the district court that the appellate court had broadened the scope of the issues on remand that it had explicitly limited in the preceding clause.

The government contends in essence, and has persuaded the majority, that the remand authorized the district court to compensate for the striking of the cross-reference by departing upward pursuant to Chapter 5 of the Guidelines. The remand, however, gave the court no such authority. The upward departure, no matter how well justified, was beyond the scope of the remand.

---

2. In *Pimentel I,* the court after direction as to resentencing "remand[ed] for further proceedings." *United States v. Pimentel,* 8 F.3d 32, 1993 WL 362253 at *2 (9th Cir.1993).

"To resentence accordingly" is possibly even more restrictive than the language in *Pimentel.*